**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PATRICIA CAVALLARO-KEARINS, MARY CEA, JOSHUA DAVIDSON, AMANDA FIELDS, TINA FULFORD, ANTONETT GARRETT, VALERIE RESOR, PHILIP SMITH, MICHELLE SPURGEON, and DENISE WILSON, on behalf of themselves and all other similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>EGGLAND'S BEST, INC. and EGGLAND'S BEST, LLC,<br><br>Defendants. | Case No. 2:24-cv-03303<br><br>**COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Patricia Cavallaro-Kearins, Mary Cea, Joshua Davidson, Amanda Fields, Tina Fulford, Antonett Garrett, Valerie Resor, Philip Smith, Michelle Spurgeon, and Denise Wilson (collectively, "Plaintiffs") bring this putative class action against Eggland's Best, LLC ("Eggland") and Eggland's Best, Inc. (collectively, "Defendants"). Plaintiffs' allegations regarding their own experiences are based on their personal knowledge. Plaintiffs' allegations regarding all other matters are based on information and belief, informed by counsel's reasonable investigation.

## I.     INTRODUCTION

1.     This action arises out of false and misleading statements that Defendants make about the Eggland's Best Cage Free ("Cage Free") eggs that they sell.

2.     Many modern consumers are aware of, and concerned about, the poor living conditions of animals raised in "factory farms." As a result, they seek food products that come from animals housed outside of artificial, industrial facilities. And they are willing to pay

premiums for those products.

3.      Knowing this, Defendants claim that their Cage Free eggs come from hens that are "free to roam in a pleasant, natural environment." They include that statement on the packaging for all the Cage Free eggs that they distribute nationwide.

4.      But that statement is false. The truth is that many hens producing Cage Free eggs live in typical factory farming conditions. They are confined indoors 24 hours per day, 365 days per year. They live in windowless structures made of concrete, metal, and dirt. The structures contain hundreds of thousands of hens packed so closely together that each bird has around one square foot of floor space (or less) to itself, and many hens living in these structures never see the sun or breathe fresh air.

5.      These hens are not "free to roam" anywhere, and their living conditions are neither "natural" nor "pleasant." Quite the opposite. Living in cramped, artificial conditions is highly stressful for hens, and it increases their risk of disease, injury, and death.

6.      Defendants' misrepresentations regarding the living conditions of Cage Free hens are intentional and misleading. Merchants often label eggs as "free range" or "pasture raised" when they come from hens with outdoor access and ample space. By labeling Cage Free eggs as "free to roam" and "natural," Defendants attract consumers who are specifically seeking eggs from hens living in "free range" or "pasture raised" environments, even though hens producing Cage Free eggs do not live in such environments. As a result, Defendants are able to sell Cage Free eggs at an unearned premium.

7.      The law does not permit this. Accordingly, Defendants must reimburse consumers, like Plaintiffs and members of the below-defined classes, who purchased Cage Free eggs at a premium due to Defendants' false statements about hens' living conditions.

## II.    PARTIES

### A.    Plaintiffs

#### 1.    *Patricia Cavallaro-Kearins*

8.      Plaintiff Patricia Cavallaro-Kearins is a Yonkers, New York resident.  She is interested in, and passionate about, animal welfare.  She has made donations to multiple animal rights organizations.  And when she shops for animal products, she specifically seeks out those that come from animals that are treated humanely.  Ms. Cavallaro-Kearins is willing to pay premiums for such products because she cares deeply for animals.

9.      In the autumn of 2023, Ms. Cavallaro-Kearins purchased a carton of Eggland's Best Cage Free eggs from a grocery store in Scarsdale, New York.  She paid a premium for the eggs compared to conventional eggs and compared to "cage free" eggs sold by other brands.

10.     Before Ms. Cavallaro-Kearins purchased the eggs, she read the following statement on their packaging: "Every hen selected to lay Eggland's Best Cage Free eggs is free to roam in a pleasant, natural environment."  Ms. Cavallaro-Kearins understood this statement to mean that all hens that produce Eggland's Best Cage Free eggs have outdoor access, have the ability to forage in the grass, have ample space, and are treated humanely.

11.     Ms. Cavallaro-Kearins would not have purchased the eggs at all, and certainly would not have paid a premium for them, had she known that they do not come from hens that are "free to roam in a pleasant, natural environment."

#### 2.    *Mary Cea*

12.     Plaintiff Mary Cea is a Long Island, New York resident.  Ms. Cea cares about animal welfare.  She adopts senior dogs and donates to animal shelters in her area.  When she purchases food products that come from animals, she prefers to purchase products that come from animals that are treated humanely.  Ms. Cea is willing to pay premiums for such products.

13.     Around January 2024, Ms. Cea purchased a carton of Eggland's Best Cage Free eggs from a grocery store in Long Island, New York.  She paid a premium for them compared to conventional eggs and compared to "cage free" eggs sold by other brands.

14.     Before Ms. Cea purchased the eggs, she read the following statement on their packaging: "Every hen selected to lay Eggland's Best Cage Free eggs is free to roam in a pleasant, natural environment."  Ms. Cea understood this statement to mean that all hens that produce Eggland's Best Cage Free eggs have outdoor access, have the ability to forage in the grass, have ample space, and are treated humanely.

15.     Ms. Cea would not have purchased the eggs at all, and certainly would not have paid a premium for them, had she known that they do not come from hens that are "free to roam in a pleasant, natural environment."

### 3.     *Joshua Davidson*

16.     Plaintiff Joshua Davidson is a Ruidoso, New Mexico resident.  He is interested in animal welfare and has volunteered at a dog and cat shelter.  When he purchases food products that come from animals, he prefers to purchase products that come from animals that are treated humanely.  Mr. Davidson is willing to pay premiums for such products.

17.     Around January 2024, Mr. Davidson purchased a carton of Eggland's Best Cage Free eggs from a grocery store in Ruidoso, New Mexico.  He paid a premium for them compared to conventional eggs and compared to "cage free" eggs sold by other brands.

18.     Before Mr. Davidson purchased the eggs, he read the following statement on their packaging: "Every hen selected to lay Eggland's Best Cage Free eggs is free to roam in a pleasant, natural environment."  Mr. Davidson understood this statement to mean that all hens that produce Eggland's Best Cage Free eggs have outdoor access, have the ability to forage in the grass, have ample space, and are treated humanely.

19.     Mr. Davidson would not have purchased the eggs at all, and certainly would not have paid a premium for them, had he known that they do not come from hens that are "free to roam in a pleasant, natural environment."

### 4.    Amanda Fields

20.     Plaintiff Amanda Fields is a Kennewick, Washington resident.  She cares deeply about animal welfare.  Since the early 2000s, she has habitually checked the labels on food products that she purchases to ensure that, if those products come from animals, they come only from animals that are treated humanely.  Ms. Fields is willing to pay premiums for those products because she believes the practices associated with factory farming are morally wrong, and she does not want to contribute to those practices.

21.     In June 2024, Ms. Fields purchased a carton of Eggland's Best Cage Free eggs from a grocery store in Kennewick, Washington.  She paid a premium for the eggs compared to conventional eggs and compared to "cage free" eggs sold by other brands.

22.     Before Ms. Fields purchased the eggs, she read the following statement on their packaging: "Every hen selected to lay Eggland's Best Cage Free eggs is free to roam in a pleasant, natural environment."  Ms. Fields understood this statement to mean that all hens that produce Eggland's Best Cage Free eggs have outdoor access, have the ability to forage in the grass, have ample space, and are treated humanely.

23.     Ms. Fields would not have purchased the eggs at all, and certainly would not have paid a premium for them, had she known that they do not come from hens that are "free to roam in a pleasant, natural environment."

### 5.    Tina Fulford

24.     Plaintiff Tina Fulford is a Fresno, California resident.  She is a food and nutrition professional who is morally opposed to causing animal suffering.  Accordingly, Ms. Fulford

- 5 -

habitually checks the labels on the food products that she purchases, to ensure that her food is nutritious and that it comes only from animals that are treated humanely. She is willing to pay premiums for such products.

25. In the winter of 2024, Ms. Fulford purchased a carton of Eggland's Best Cage Free eggs from a grocery store in Fresno, California. She paid a premium for the eggs compared to conventional eggs and compared to "cage free" eggs sold by other brands.

26. Before Ms. Fulford purchased the eggs, she read the following statement on their packaging: "Every hen selected to lay Eggland's Best Cage Free eggs is free to roam in a pleasant, natural environment." Ms. Fulford understood this statement to mean that all hens that produce Eggland's Best Cage Free eggs have outdoor access, have the ability to forage in the grass, have ample space, and are treated humanely.

27. Ms. Fulford would not have purchased the eggs at all, and certainly would not have paid a premium for them, had she known that they do not come from hens that are "free to roam in a pleasant, natural environment."

### 6.  *Antonett Garrett*

28. Plaintiff Antonett Garrett is a Washington, D.C. resident. She cares deeply about animal welfare and has donated to animal shelters in the past. When she purchases food products that come from animals, she prefers to purchase products that come from animals that are treated humanely. Ms. Garrett is willing to pay premiums for those products.

29. In the summer of 2023, she purchased a carton of Eggland's Best Cage Free eggs from a grocery store in Washington, D.C. She paid a premium for them compared to conventional eggs and compared to "cage free" eggs sold by other brands.

30. Before Ms. Garrett purchased the eggs, she read the following statement on their packaging: "Every hen selected to lay Eggland's Best Cage Free eggs is free to roam in a pleasant,

natural environment." Ms. Garrett understood this statement to mean that all hens that produce Eggland's Best Cage Free eggs have outdoor access, have the ability to forage in the grass, have ample space, and are treated humanely.

31.     Ms. Garrett would not have purchased the eggs at all, and certainly would not have paid a premium for them, had she known that they do not come from hens that are "free to roam in a pleasant, natural environment."

### 7.     *Valerie Resor*

32.     Plaintiff Valerie Resor is a Las Vegas, Nevada resident. She often checks the labels on food products that she purchases to ensure that, if those products come from animals, they come from animals that are treated humanely. Ms. Resor is willing to pay premiums for those products because she cares deeply about animals and does not want them to suffer.

33.     In 2020, at a grocery store in Las Vegas, Nevada, Ms. Resor read the following statement on a carton of Eggland's Best Cage Free eggs: "Every hen selected to lay Eggland's Best Cage Free eggs is free to roam in a pleasant, natural environment." Ms. Resor understood this statement to mean that all hens that produce Eggland's Best Cage Free eggs have outdoor access, have the ability to forage in the grass, have ample space, and are treated humanely.

34.     Ms. Resor purchased the carton of Eggland's Best Cage Free eggs in 2020 and purchased more cartons subsequently, most recently in approximately October 2023 at a grocery store in Las Vegas, Nevada. In each instance, she paid a premium for them compared to conventional eggs and compared to "cage free" eggs sold by other brands.

35.     Ms. Resor would not have purchased the eggs at all, and certainly would not have paid a premium for them, had she known that they do not come from hens that are "free to roam in a pleasant, natural environment."

8.    *Philip Smith*

36.    Plaintiff Philip Smith is a Los Angeles, California resident. He is passionate about animal welfare, and he previously worked as a manager at a "no kill" animal shelter. Whenever he purchases animal products, he seeks out products that are "cruelty free." He is willing to pay premiums for these products because he is aware of, and opposed to, the animal abuse that takes place in factory farming systems.

37.    Around Easter in 2022, Mr. Smith purchased a carton of Eggland's Best Cage Free eggs from a store in Los Angeles, California. He paid a premium for the eggs compared to conventional eggs and compared to "cage free" eggs sold by other brands.

38.    Before Mr. Smith purchased the eggs, he read the following statement on their packaging: "Every hen selected to lay Eggland's Best Cage Free eggs is free to roam in a pleasant, natural environment." Mr. Smith understood this statement to mean that all hens that produce Eggland's Best Cage Free eggs have outdoor access, have the ability to forage in the grass, have ample space, and are treated humanely.

39.    Mr. Smith would not have purchased the eggs at all, and certainly would not have paid a premium for them, had he known that they do not come from hens that are "free to roam in a pleasant, natural environment."

9.    *Michelle Spurgeon*

40.    Plaintiff Michelle Spurgeon is a Troutdale, Oregon resident. She cares deeply about animal welfare and is morally opposed to causing animal suffering. When she shops for animal products, she habitually checks the products' labels to ensure they come from humanely treated animals. She is willing to pay premiums for those products.

41.    During the spring of 2024, Ms. Spurgeon purchased cartons of Eggland's Best Cage Free eggs from grocery stores in Troutdale, Oregon; Gresham, Oregon; and Wood Village,

Oregon. She paid a premium for them compared to conventional eggs and compared to "cage free" eggs sold by other brands.

42.     Before Ms. Spurgeon purchased the eggs, she read the following statement on their packaging: "Every hen selected to lay Eggland's Best Cage Free eggs is free to roam in a pleasant, natural environment." Ms. Spurgeon understood this statement to mean that all hens that produce Eggland's Best Cage Free eggs have outdoor access, have the ability to forage in the grass, have ample space, and are treated humanely.

43.     Ms. Spurgeon would not have purchased the eggs at all, and certainly would not have paid a premium for them, had she known that they do not come from hens that are "free to roam in a pleasant, natural environment."

    *10.     Denise Wilson*

44.     Plaintiff Denise Wilson is a Washington, D.C. resident. She cares deeply about animal welfare and has, in the past, adopted cats and dogs from animal shelters. When she shops for animal products, she seeks to ensure they come from humanely treated animals. She is willing to pay premiums for those products.

45.     Around April 2024, Ms. Wilson purchased a carton of Eggland's Best Cage Free eggs from a store in Washington, D.C. She paid a premium for them compared to conventional eggs and compared to "cage free" eggs sold by other brands.

46.     Before Ms. Wilson purchased the eggs, she read the following statement on their packaging: "Every hen selected to lay Eggland's Best Cage Free eggs is free to roam in a pleasant, natural environment." Ms. Wilson understood this statement to mean that all hens that produce Eggland's Best Cage Free eggs have outdoor access, have the ability to forage in the grass, have ample space, and are treated humanely.

47.     Ms. Wilson would not have purchased the eggs at all, and certainly would not have

paid a premium for them, had she known that they do not come from hens that are "free to roam in a pleasant, natural environment."

**B.     Defendants**

48.     Defendant Eggland's Best, Inc. is a corporation headquartered and incorporated in Pennsylvania.

49.     Defendant Eggland's Best, LLC is a limited liability company headquartered in Pennsylvania and incorporated in Delaware.

50.     Defendants Eggland's Best, Inc. and Eggland's Best, LLC both share a principal place of business located at 1400 South Trooper Road, Suite 201, Jeffersonville, Pennsylvania. They are functionally the same entity.  Eggland's Best, Inc. co-created Eggland's Best, LLC in 2012 to produce and sell branded eggs.  At the time, Eggland's Best, Inc. transferred assets and trademarks to Eggland's Best, LLC.   The former owns at least 50 percent equity in the latter.  Both companies have overlapping officers, including the same president and CEO.

51.     Eggland's Best, LLC directly produces, markets, licenses, distributes, and sells the Cage Free eggs at issue in this lawsuit.  It also directly created and approved the language that the eggs' packaging includes (the packaging states, in small print, "produced and distributed by approval from Eggland's Best, LLC").     Eggland's Best, LLC also operates the www.egglandsbest.com domain, and sub-domains, referenced herein.  It creates and approves the content on those web-pages.

52.     Eggland's Best, Inc. participates in the production, marketing, licensing, distribution, and sale of the Cage Free eggs at issue in this lawsuit.  Through its control of Eggland's Best, LLC's equity and acting through the officers it shares with Eggland's Best, LLC, Eggland's Best, Inc. assisted in creating—and provided final approval to—the language that Cage

Free eggs' packaging includes and the content of the www.egglandsbest.com domain and sub-domains. By the same mechanisms, Eggland's Best, Inc. has participated in, and continues to participate in, all actions and omissions attributed to Eggland's Best, LLC (i.e., "Eggland") within this complaint. And it has the same knowledge attributed to Eggland's Best, LLC in this complaint.

## III.    JURISDICTION AND VENUE

53.    This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 exclusive of interest and costs and there is diversity of citizenship between the parties. This Court also has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(d) because this is a class action with more than 100 class members, there is diversity of citizenship among the parties, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs. Defendants have sold millions of Cage Free eggs to hundreds of thousands or millions of consumers in each of Plaintiffs' states during the limitations periods applicable to Plaintiffs' and the below-defined classes' claims. Plaintiffs and members of the classes are entitled to recover the full cost, or a portion of the full cost, of each carton of Cage Free eggs that they purchased (which sell for varying prices depending on location, including $4.99 at some locations). They are also entitled to recover liquidated damages and punitive damages under the consumer protection statutes raised below.

54.    This Court has general personal jurisdiction over Defendants because Defendants maintain their headquarters and principal place of business at the above-listed Pennsylvania address.

55.    Venue is proper under 28 U.S.C. § 1391(b)(1) because Defendants reside in this judicial district. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this lawsuit occurred in this judicial district. In particular,

Defendants made strategic decisions regarding the misrepresentations and omissions forming the basis for this suit in this judicial district. Further, venue is proper under 28 U.S.C. § 1391(b)(3) because Defendants are subject to the Court's personal jurisdiction with respect to this lawsuit.

56. The Eastern District of Pennsylvania is a proper place for the trial of the below-defined California claims under Section 1780(d) of the California Civil Code because both Defendants conduct business from the Eastern District of Pennsylvania. Ex. 1, Affidavit of John J. Frawley.

## IV. FACTUAL ALLEGATIONS

### A. Modern consumers seek out, and pay premiums for, food products from humanely treated animals.

57. Modern consumers are aware of, and concerned about, the mistreatment of animals that occurs in "factory farming" systems. "Factory farming involves raising livestock in densely populated environments." Jonathan Anomaly, *What's Wrong With Factory Farming?*, PUBLIC HEALTH ETHICS, Volume 8, Issue 3, November 2015, Pages 246–254, https://academic.oup.com/phe/article/8/3/246/2362362 (last visited July 9, 2024).

58. Factory farms compete with one another to minimize expenses and provide low-cost food products. Their cost-minimizing efforts often result in poor living conditions for the animals that produce those products.

59. These practices have led to numerous scandals, including scandals involving Eggland producers. In 2016, an animal rights group obtained "undercover footage" showing "sickening animal abuse at several Eggland's Best suppliers." *Hidden-Camera Video Uncovers Animal Abuse And Neglect At Eggland's Best Supplier*, PR NEWSWIRE (June 22, 2016), www.prnewswire.com/news-releases/hidden-camera-video-uncovers-animal-abuse-and-neglect-at-egglands-best-supplier-300288379.html (last visited July 9, 2024). The footage showed

"thousands of birds packed into filthy wire battery cages, hardly able to move without crawling over other birds," as well as "[s]everely sick and injured birds" that were "left to suffer and slowly die without proper veterinary care." *Id.*

60.     Many consumers prefer to avoid incentivizing factory farming—and the animal suffering it creates—for moral, philosophical, or religious reasons.  Accordingly, they do not purchase food products originating from factory farms.  Rather, they specifically seek out products that are from animals housed in natural and pleasant conditions, such as conditions in which the animals have outdoor access and ample space.

61.     These consumers are now a significant proportion of the public.  "Surveys reliably show that the American public cares deeply about farm animals and wants them to be protected from suffering."  *Opinion Surveys on Food & Farming Systems*, AMERICAN SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS, www.aspca.org/protecting-farm-animals/aspca-surveys (last visited July 9, 2024).  In a 2021 consumer survey, "most [respondents] state[d] that it matters to them that hens do not suffer in the process of producing the eggs they eat."  Michelle Sinclair, et al., *Consumer Attitudes Toward Egg Production Systems and Hen Welfare Across the World*, 3 FRONTIERS IN ANIMAL SCIENCE 1, 2 (Oct. 12, 2022), https://www.frontiersin.org/articles/10.3389/fanim.2022.995430/full (last visited July 9, 2024).  Similarly, in a 2015 national consumer survey, 84 percent of respondents said that "providing better living conditions for animals" is a "very important or important" issue that they consider "when shopping for food."  *Natural Food Labels Survey*, CONSUMER REPORTS NATIONAL RESEARCH CENTER (2015), https://tinyurl.com/28xn3bm8 (last visited July 9, 2024).

62.     Because consumers care about animal welfare, they are willing to pay premiums for products from animals that are housed in pleasant and natural conditions.  The better the

animals' living conditions, the more consumers are willing to pay.

63.     Generally, "cage free" eggs sell at prices 7 percent higher than conventional eggs. *See* https://ag.purdue.edu/cfdas/resource-library/egg-prices (showing that, as of January 31, 2024, conventional eggs sold for an average price of $3.87 per dozen whereas cage free eggs sold for an average price of $4.15 per dozen) (last visited July 9, 2024).  And the premiums for Eggland's Cage Free eggs are even more exaggerated.  Eggland sells "large" Cage Free eggs for up to a 25 percent premium over its "large" conventional eggs, which is over *three times* higher than the average premium for cage free eggs across all brands.[1]

64.     Notably, Eggland's premium for its Cage Free eggs is nearly as large as the average premium (over conventional eggs) that is given to eggs bearing a "free range" label (26 percent) across all egg brands.  *See* https://ag.purdue.edu/cfdas/resource-library/egg-prices (showing that, as of January 31, 2024, free range eggs sold for $4.89 per dozen compared to conventional eggs selling for $3.87 per dozen) (last visited July 9, 2024).  This is because consumers equate Eggland's Cage Free eggs with eggs from hens that have outdoor access, like "free range" hens.

**B.      To induce consumers to purchase and pay premiums for its Cage Free eggs, Eggland states that those eggs come from hens "free to roam in a pleasant, natural environment."**

65.     Consumers who equate Eggland's Cage Free eggs with free range eggs do so reasonably.  Eggland is aware that certain consumers care about hens' living conditions, and it specifically advertises its Cage Free eggs to appeal to those consumers.  Next to the Nutrition Facts label on the packaging for Cage Free eggs, Eggland states: "Every hen selected to lay Eggland's

---

[1]     *Compare* https://www.marianos.com/p/eggland-s-best-classic-large-white-eggs-12-count/0071514150349?searchType=default_search (selling twelve large conventional Eggland eggs for $3.99) (last visited July 19, 2024), *with* https://www.marianos.com/p/eggland-s-best-cage-free-large-brown-eggs-12-count/0071514151464?searchType=default_search (selling twelve large Cage Free eggs for $4.99) (last visited July 19, 2024).

Best Cage Free eggs is free to roam in a pleasant, natural environment." www.egglandsbest.com/product/cage-free-eggs (scroll to second image) (last visited July 9, 2024). The packaging is shown below:



66. Eggland has included this language uniformly on the packaging for all Cage Free eggs since at least April 2020. https://tinyurl.com/4cnzxfua (scroll to second image) (April 4, 2020 snapshot from Eggland website showing packaging for Cage Free eggs) (last visited July 9, 2024).

**C. Hens producing Eggland's Cage Free eggs are not, in fact, "free to roam in a pleasant, natural environment."**

67. It is not true that "[e]very hen selected to lay Eggland's Best Cage Free eggs is free to roam in a pleasant, natural environment." In fact, every part of that claim is false or misleading.

*1. Hens that produce Eggland's Best Cage Free eggs do not live in a "natural" environment.*

68. To begin, hens that produce Cage Free eggs do not live in a "natural" environment. None of them ever have outdoor access. And many or all of them live in massive, industrial egg-laying compounds, such as the one shown below:



External image of facility run by Herbruck's Poulty Ranch, an Eggland supplier.
Source: https://www.youtube.com/watch?v=pXwbTtQWaqg (last visited July 9, 2024).

69.     The facilities at these compounds are specifically constructed to prevent hens from gaining any exposure to the natural world.  As a representative of one of Eggland's suppliers has put it, the facilities are designed "to keep the outside out, and the inside in" in the name of "biosecurity."  www.youtube.com/watch?v=pXwbTtQWaqg (1:43–1:48) (last visited July 9, 2024).

70.     The result is that the hens are kept in completely artificial environments.  They live in windowless rooms made of concrete, metal, and dirt.  They breathe filtered air, they do not see the sun, and they have no access to grass or other natural vegetation.

71.     These facilities are the opposite of "natural," and they also prevent hens from exhibiting their natural behaviors.  Hens are "inquisitive" and "energetic" creatures that require environmental stimulation to flourish.  *Adopting and Caring for Backyard Chickens*, HUMANE SOCIETY, www.humanesociety.org/resources/adopting-and-caring-backyard-chickens (last visited July 9, 2024) (hens should "have free access to grass and other vegetation to engage in natural pecking, scratching, and foraging behaviors" and "it is important to provide plenty of space, giving them as much room as possible to express natural behavior outdoors").  Instinctually, they spend between 60 percent and 75 percent of their daylight hours roaming and foraging in grass or vegetation.  *A Day in the Life of a Laying Hen*, GLOBAL ANIMAL PARTNERSHIP,

https://globalanimalpartnership.org/about/news/post/day-in-the-life-of-a-laying-hen (last visited July 9, 2024) ("Research has shown that hens living in a more naturalistic environment were observed to spend up to 75% of daylight hours foraging – a behavior that includes scratching and pecking at the ground and vegetation in search of food."); Brigid McCrea & Bethany Baker, *Common Backyard Chicken Behaviors*, ALABAMA A&M AND AUBURN UNIVERSITIES' EXTENSION, https://tinyurl.com/yc3ee8hh (last visited July 9, 2024) ("Chickens spend around 61 percent of their active time on foraging and feeding behavior.").  To do so, they need access to vegetation and ample space to roam, neither of which are available in the facilities at which Cage Free hens live.  *See Adopting and Caring for Backyard Chickens*, HUMANE SOCIETY, www.humanesociety.org/resources/adopting-and-caring-backyard-chickens (last visited July 9, 2024)

> 2. *Hens that produce Eggland's Best Cage Free eggs do not live in "pleasant" environments.*

72. The facilities at which Cage Free hens live also are not "pleasant."  They often cram hundreds of thousands of hens into a single building and devote approximately one square foot (or less) of floor space to each bird.  Images from such facilities are below.



June 2021 image from cage free farm run by Herbruck's Poultry Ranch, a supplier for
Eggland's Best. Source: https://www.youtube.com/watch?v=pXwbTtQWaqg (last visited July 9, 2024).



June 2021 image from cage free farm run by Herbruck's Poultry Ranch, a supplier for
Eggland's Best. Source: https://www.youtube.com/watch?v=pXwbTtQWaqg (last visited July 9, 2024).



November 2015 image from cage free farm run by Herbruck's Poultry Ranch, a supplier for Eggland's
Best. Source: https://www.youtube.com/watch?app=desktop&v=JqIL_5IY_Co (last visited July 9, 2024).



November 2009 image from cage free farm run by Morning Fresh Farms, a supplier for Eggland's
Best.  Source: https://www.denverpost.com/2009/12/15/eggs-cracking-the-mystery (last visited July 9, 2024).

73. Living in facilities like this, with high population or "stocking" density, is highly

unpleasant for hens.

- 18 -

74.     Studies show that "high stocking density increase[s] chronic stress" among hens. Andrew M. Campbell, et al., *Measuring Chronic Stress in Broiler Chickens: Effects of Environmental Complexity and Stocking Density on Immunoglobulin-A Levels*, NATIONAL CENTER FOR BIOTECHNOLOGY INFORMATION (June 22, 2024), https://tinyurl.com/bdd6ya73 (last visited July 9, 2024).

75.     And high stocking density leads to other issues, including "lower feed intake, stunted growth, decreased crouching, walking, preening . . . listlessness, and an increased risk of health problems."  Mishkatul Zabir, et al., *Impacts of Stocking Density Rates on Welfare, Growth, and Hemato-Biochemical Profile in Broiler Chickens*, NATIONAL CENTER FOR BIOTECHNOLOGY INFORMATION (Nov. 4, 2021), https://tinyurl.com/yc3jtkxn (last visited July 9, 2024).

76.     High stocking density also increases the risk that hens will fight amongst themselves.  As a worker for an Eggland supplier has admitted, in its cage free barns, hens "can pile on themselves . . . they can wind up piling on top of each other" and they are sometimes "injured or killed by their pen-mates" as a result.  https://tinyurl.com/abcbn75n (last visited July 9, 2024).

> *3.     Hens that produce Eggland's Best Cage Free eggs are not "free to roam."*

77.     Finally, Cage Free hens are not "free to roam," as Eggland claims.  Consumers reasonably associate the phrase "free to roam" with hens that have outdoor access and ample space. That is why eggs from hens that *do* have outdoor access and ample space are often labelled "free to roam."  *E.g.*, https://vitalfarms.com/eggs ("All our pasture-raised eggs are laid by hens that are free to roam on healthy pasture land all year long."); https://www.nelliesfreerange.com/products/free-range-eggs (showing carton label for free range eggs stating "our hens have free range to roam") (last visited July 9, 2024).  And it is why brands—aside from Eggland—that make "roaming" claims for indoor-only hens explicitly qualify those

claims to avoid misleading consumers. *E.g.*, www.saudereggs.com/product/cage-free-brown (stating that "Cage-Free chickens" are "free to roam" and qualifying that "[t]hey are kept in large heated and air-cooled growing houses *with no outdoor access*"; showing packaging for "nest eggs" stating that they are "from hens who have the freedom to roam *the henhouse*") (emphasis added) (last visited July 9, 2024).

78.     "Free to roam" also closely resembles other common egg labels, like "free range." Free range eggs, themselves, come from hens with outdoor access. By claiming its Cage Free eggs come from hens that are "free to roam" (in a "natural" and "pleasant" environment, no less) while omitting that those hens have no outdoor access and lack ample space, Eggland associates its Cage Free eggs with free range eggs and misleads consumers.

> **D.     Eggland's misrepresentations regarding the living conditions of hens producing cage free eggs are knowing, willful, and intentional.**

79.     Eggland knows that hens producing Cage Free eggs are not "free to roam in a pleasant, natural environment," as Cage Free eggs' packaging claims. Eggland has access to annual audits of the facilities that produce Cage Free eggs. *See* www.egglandsbest.com/faqs/animal-welfare ("All Eggland's Best production facilities are audited annually to ensure that flocks are healthy and have sufficient space, light, ventilation, water, and feed and are protected from injury.") (last visited July 9, 2024). These audits demonstrate the above-described living conditions for Cage Free hens, which are not "free," "pleasant," or "natural."

80.     Relatedly, Eggland knows that Cage Free hens do not have outdoor access. It admits that on a sub-page of its website. https://www.egglandsbest.com/faqs/animal-welfare (stating that hens producing Eggland's Cage Free eggs "do not have outdoor access like free-range hens") (last visited July 9, 2024). Yet it omits this information from Cage Free eggs' packaging.

- 20 -

## V.     CLASS ACTION ALLEGATIONS

81.     Plaintiffs bring this action on behalf of themselves and similarly situated individuals, as defined below.

82.     Tina Fulford and Philip Smith (the "California Plaintiffs") seek to represent a class (the "California Class") of all individuals who, in the State of California, purchased Eggland's Best Cage Free eggs at any time within the limitations statutes applicable to the below-defined California claims.

83.     Antonett Garrett and Denise Wilson (the "D.C. Plaintiffs") seek to represent a class (the "D.C. Class") of all individuals who, in the District of Columbia, purchased Eggland's Best Cage Free eggs at any time within the limitations statutes applicable to the below-defined D.C. claims.

84.     Valerie Resor (the "Nevada Plaintiff") seeks to represent a class (the "Nevada Class") of all individuals who, in the State of Nevada, purchased Eggland's Best Cage Free eggs at any time within the limitations statutes applicable to the below-defined Nevada claims.

85.     Joshua Davidson (the "New Mexico Plaintiff") seeks to represent a class (the "New Mexico Class") of all individuals who, in the State of New Mexico, purchased Eggland's Best Cage Free eggs at any time within the limitations statutes applicable to the below-defined New Mexico claims.

86.     Patricia Cavallaro-Kearins and Mary Cea (the "New York Plaintiffs") seek to represent a class (the "New York Class") of all individuals who, in the State of New York, purchased Eggland's Best Cage Free eggs at any time within the limitations statutes applicable to the below-defined New York claims.

87.     Michelle Spurgeon (the "Oregon Plaintiff") seeks to represent a class (the "Oregon Class") of all individuals who, in the State of Oregon, purchased Eggland's Best Cage Free eggs

at any time within the limitations statutes applicable to the below-defined Oregon claims.

88.   Amanda Fields (the "Washington Plaintiff") seeks to represent a class (the "Washington Class") of all individuals who, in the State of Washington, purchased Eggland's Best Cage Free eggs at any time within the limitations statutes applicable to the below-defined Washington claims.

89.   The above-defined classes meet the certification prerequisites of Federal Rule of Civil Procedure 23(a).  They are too numerous for practicable joinder, given that Eggland has sold hundreds of thousands or millions of cartons of Cage Free eggs in each of Plaintiffs' respective states within the applications limitations periods (meaning there are hundreds of thousands or millions of members of the above-defined classes).  There are also questions of law and fact common to the above-defined classes, such as whether the representations and omissions Eggland makes regarding its Cage Free eggs are, in fact, false or misleading.  Plaintiffs' claims are typical of the above-defined classes' claims because they arise from the same alleged misrepresentations and omissions, and they depend on the same legal theories.  Further, Plaintiffs and their counsel are adequate representatives of the above-defined classes.  Plaintiffs have suffered the same injury as members of the classes they seek to represent (they purchased products at prices artificially inflated by Eggland's misrepresentations and omissions); Plaintiffs have no conflicts of interest with members of the classes they seek to represent; and Plaintiffs' counsel is highly experienced in class action litigation, including consumer class action litigation.

90.   The above-defined classes also meet the certification requirements of Federal Rule of Civil Procedure 23(b)(3).  Questions of law and fact common to Class members predominate over any questions affecting only individual members, given that this case hinges on whether the uniform statements made on Eggland's Cage Free eggs' packaging are false or misleading.  And

a class action is superior to other available methods for adjudicating this controversy. It will promote fairness, justice, and efficiency, as well as reduce litigation costs and duplicative litigation stemming from the millions of cumulative Cage Free eggs sales that Eggland has made in Plaintiffs' states.

## VI.    CAUSES OF ACTION

91.    Plaintiffs seek the following relief based on the following causes of action.

### First Cause of Action
### Violation of the California False Advertising Law
### (Brought by the California Plaintiffs on Behalf of the California Class)

92.    Plaintiffs incorporate by reference and reallege here all foregoing paragraphs of this Complaint.

93.    Under California's False Advertising Law ("FAL"), it is "unlawful" to make "untrue or misleading" statements which are "known, or which by the exercise of reasonable care should be known, to be untrue or misleading" with the "intent directly or indirectly to dispose of real or personal property." Cal. Bus. & Prof. Code § 17500.

94.    Defendants violated the FAL. They stated the following on Cage Free eggs' packaging: "Every hen selected to lay Eggland's Best Cage Free eggs is free to roam in a pleasant, natural environment." That statement was not true. And it was also misleading based on what it omitted. Defendants failed to state, on Cage Free eggs' packaging, that hens producing Cage Free eggs do not have access to the outdoors, natural vegetation, fresh air, or sunlight. Defendants also failed to state that hens producing Cage Free eggs are kept in facilities providing them with approximately one square foot (or less) of floor space.

95.    Defendants' misrepresentations and omissions caused injury to the California Plaintiffs and the California Class. Those misrepresentations and omissions permitted Defendants to sell Cage Free eggs at prices higher than Defendants otherwise would have been able to sell

them. This heightened price was charged both to those who saw and relied on Defendants' misrepresentations and omissions and those who did not. Thus, the California Plaintiffs and the California Class suffered injury in the form of a price premium.

96. Defendants intended for consumers, including the California Plaintiffs and members of the California Class, to rely on their misrepresentations and omissions so that they would purchase Cage Free eggs and do so at a price premium. Defendants also made their misrepresentations and omissions knowingly. They should have—and in fact did—know that the hens producing Cage Free eggs are not "free to roam in a pleasant, natural environment."

97. As a result, the California Plaintiffs and the California Class each seek and are entitled to: (a) restitution, (b) reasonable costs and attorney's fees, and (c) any other relief the Court deems proper. Cal. Bus. & Prof. Code § 17535; Cal. Civ. Proc. Code § 1021.5.

**Second Cause of Action**
**Violation of the California Legal Remedies Act**
**(Brought by the California Plaintiffs on Behalf of the California Class)**

98. Plaintiffs incorporate by reference and reallege here all foregoing paragraphs of this Complaint.

99. Under the California Legal Remedies Act ("CLRA"), the following is "unlawful": "[m]isrepresenting the source, sponsorship, approval, or certification of goods or services," Cal. Civ. Code § 1770(a)(2); "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," *id.* § 1770(a)(5); and "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," *id.* § 1770(a)(7).

100. Defendants violated these provisions of the CLRA. They stated the following on Cage Free eggs' packaging: "Every hen selected to lay Eggland's Best Cage Free eggs is free to

roam in a pleasant, natural environment." That statement was not true. And it was also misleading based on what it omitted. Defendants failed to state, on Cage Free eggs' packaging, that hens producing Cage Free eggs do not have access to the outdoors, natural vegetation, fresh air, or sunlight. Defendants also failed to state that hens producing Cage Free eggs are kept in facilities providing them with approximately one square foot (or less) of floor space.

101. Defendants' misrepresentations and omissions caused injury to the California Plaintiffs and the California Class. Those misrepresentations and omissions permitted Defendants to sell Cage Free eggs at prices higher than Defendants otherwise would have been able to sell them. This heightened price was charged both to those who saw and relied on Defendants' misrepresentations and omissions and those who did not. Thus, the California Plaintiffs and the California Class suffered injury in the form of a price premium.

102. Defendants intended for consumers, including the California Plaintiffs and members of the California Class, to rely on their misrepresentations and omissions so that they would purchase Cage Free eggs and do so at a price premium. Defendants also made their misrepresentations and omissions knowingly. They should have—and in fact did—know that the hens producing Cage Free eggs are not "free to roam in a pleasant, natural environment."

103. As a result, the California Plaintiffs and the California Class each seek and are entitled to: (a) restitution; (b) injunctive relief; (c) reasonable costs and attorney's fees; and (d) any other relief the Court deems proper. Cal. Civ. Code § 1780.

**Third Cause of Action**
**Violation of the California Unfair Competition Law**
**(Brought by the California Plaintiffs on Behalf of the California Class)**

104. Plaintiffs incorporate by reference and reallege here all foregoing paragraphs of this Complaint.

105.    Defendants violated the unlawful, unfair, and fraudulent prongs of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et. seq.*

106.    Defendants violated the unlawful prong of the UCL by violating the FAL and the CLRA, as set forth above.

107.    Defendants violated the unfair prong of the UCL by making false and misleading statements about Cage Free eggs and by omitting material information from statements about those eggs.  Defendants profited enormously as a result of their misrepresentations and omissions by charging a price premium they otherwise would have been unable to charge for Cage Free eggs. The California Plaintiffs and other consumers suffered substantial injury as a result because they would not have purchased Cage Free eggs absent Defendants' misrepresentations and omissions or would not have paid a price as high absent Defendants' misrepresentations and omissions. No benefit to the California Plaintiffs, consumers, or the principles of competition arose from Defendants' misrepresentations and omissions, which served only to mislead consumers and unfairly enrich Defendants.  Defendants' misrepresentations and omissions were immoral, unethical, and oppressive.

108.    Defendants violated the fraudulent prong of the UCL by intentionally and knowingly making misrepresentations and omissions about Cage Free eggs that were likely to deceive reasonable consumers, on which the California Plaintiffs, members of the California Class, and other consumers relied in purchasing the Cage Free eggs, and which caused the California Plaintiffs, the California Class, and other consumers injury in the form of a purchase they otherwise would not have made or a purchase at a price premium.

109.    As a result, the California Plaintiffs and members of the California Class each seek and are entitled to: (a) restitution, (b) reasonable costs and attorney's fees, and (c) any other relief

the Court deems proper.  Cal. Bus. & Prof. Code § 17203; Cal. Civ. Proc. Code § 1021.5.

**Fourth Cause of Action**
**Violation of the D.C. Consumer Protection Procedures Act**
**(Brought by the D.C. Plaintiffs on Behalf of the D.C. Class)**

110.    Plaintiffs incorporate by reference and reallege here all foregoing paragraphs of this Complaint.

111.    It is a violation of the D.C. Consumer Protection Procedures Act ("D.C. Act") to do the following: "represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have," D.C. Code § 28-3904(a); "represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another," *id.* § 28-3904(d); "misrepresent as to a material fact which has a tendency to mislead," *id.* § 28-3904(e); "fail to state a material fact if such failure tends to mislead," *id.* § 28-3904(f); or "use innuendo or ambiguity as to a material fact, which has a tendency to mislead," *id.* § 28-3904(f-1).

112.    Defendants violated these provisions of the D.C. Act.  They stated the following on Cage Free eggs' packaging: "Every hen selected to lay Eggland's Best Cage Free eggs is free to roam in a pleasant, natural environment."  That statement was not true.  And it was also misleading based on what it omitted.  Defendants failed to state, on Cage Free eggs' packaging, that hens producing Cage Free eggs do not have access to the outdoors, natural vegetation, fresh air, or sunlight.  Defendants also failed to state that hens producing Cage Free eggs are kept in facilities providing them with approximately one square foot (or less) of floor space.

113.    Defendants' misrepresentations and omissions caused injury to the D.C. Plaintiffs and the D.C. Class.  Those misrepresentations and omissions permitted Defendants to sell Cage Free eggs at prices higher than Defendants otherwise would have been able to sell them.  This

- 27 -

heightened price was charged both to those who saw and relied on Defendants' misrepresentations and omissions and those who did not. Thus, the D.C. Plaintiffs and the D.C. Class suffered injury in the form of a price premium.

114.     Defendants intended for consumers, including the D.C. Plaintiffs and members of the D.C. Class, to rely on their misrepresentations and omissions so that they would purchase Cage Free eggs and do so at a price premium. Defendants also made their misrepresentations and omissions knowingly. They should have—and in fact did—know that the hens producing Cage Free eggs are not "free to roam in a pleasant, natural environment."

115.     As a result, the D.C. Plaintiffs and members of the D.C. Class each seek and are entitled to: (a) treble damages, or $1,500 per violation, whichever is greater; (b) reasonable attorneys' fees; (c) punitive damages; and (d) any other relief the Court deems proper. D.C. Code § 28-3905.

**Fifth Cause of Action**
**Violation of the Nevada Deceptive Trade Practices Act**
**(Brought by the Nevada Plaintiff on Behalf of the Nevada Class)**

116.     Plaintiffs incorporate by reference and reallege here all foregoing paragraphs of this Complaint.

117.     A company engages in a deceptive trade practice under the Nevada Deceptive Trade Practices Act ("DTPA") if it "[k]nowingly makes a false representation as to the source, sponsorship, approval or certification of goods or services for sale or lease," Nev. Rev. Stat. § 598.0915(2); "[k]nowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith," *id.* § 598.0915(5); "[r]epresents that goods or services for sale or lease are of a particular standard,

quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model," *id.* § 598.0915(7); or "[k]nowingly makes any other false representation in a transaction," *id.* § 598.0915(15).

118.    Defendants committed deceptive trade practices under the above definitions. They stated the following on Cage Free eggs' packaging: "Every hen selected to lay Eggland's Best Cage Free eggs is free to roam in a pleasant, natural environment." That statement was not true. And it was also misleading based on what it omitted. Defendants failed to state, on Cage Free eggs' packaging, that hens producing Cage Free eggs do not have access to the outdoors, natural vegetation, fresh air, or sunlight. Defendants also failed to state that hens producing Cage Free eggs are kept in facilities providing them with approximately one square foot (or less) of floor space.

119.    Defendants' misrepresentations and omissions caused injury to the Nevada Plaintiff and the Nevada Class. Those misrepresentations and omissions permitted Defendants to sell Cage Free eggs at prices higher than Defendants otherwise would have been able to sell them. This heightened price was charged both to those who saw and relied on Defendants' misrepresentations and omissions and those who did not. Thus, the Nevada Plaintiff and the Nevada Class suffered injury in the form of a price premium.

120.    Defendants intended for consumers, including the Nevada Plaintiff and members of the Nevada Class, to rely on their misrepresentations and omissions so that they would purchase Cage Free eggs and do so at a price premium. Defendants also made their misrepresentations and omissions knowingly. They should have—and in fact did—know that the hens producing Cage Free eggs are not "free to roam in a pleasant, natural environment."

121.    As a result, the Nevada Plaintiff and members of the Nevada Class each seek and

are entitled to: (a) actual damages; (b) reasonable attorney's fees and costs; and (c) any other relief the Court deems proper. Nev. Rev. Stat. § 41.600.

**Sixth Cause of Action**
**Violation of the New Mexico Unfair Practices Act**
**(Brought by the New Mexico Plaintiff on Behalf of the New Mexico Class)**

122. Plaintiffs incorporate by reference and reallege here all foregoing paragraphs of this Complaint.

123. Under the New Mexico Unfair Practices Act ("UPA"), "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce are unlawful." N.M. Stat. § 57-12-3. Unfair and deceptive trade practices include: "causing confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services," N.M. Stat. § 57-12-2(D)(2); "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that the person does not have," *id.* § 57-12-2(D)(5); "representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another," *id.* § 57-12-2(D)(7); and "using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive," *id.* § 57-12-2(D)(14). Unconscionable trade practices include those that "take[] advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree." *Id.* § 57-12-2(E)(1).

124. Defendants committed unfair, deceptive, and unconscionable trade practices under the above definitions. They stated the following on Cage Free eggs' packaging: "Every hen selected to lay Eggland's Best Cage Free eggs is free to roam in a pleasant, natural environment." That statement was not true. And it was also misleading based on what it omitted. Defendants

failed to state, on Cage Free eggs' packaging, that hens producing Cage Free eggs do not have access to the outdoors, natural vegetation, fresh air, or sunlight. Defendants also failed to state that hens producing Cage Free eggs are kept in facilities providing them with approximately one square foot (or less) of floor space.

125. Defendants' misrepresentations and omissions caused injury to the New Mexico Plaintiff and the New Mexico Class. Those misrepresentations and omissions permitted Defendants to sell Cage Free eggs at prices higher than Defendants otherwise would have been able to sell them. This heightened price was charged both to those who saw and relied on Defendants' misrepresentations and omissions and those who did not. Thus, the New Mexico Plaintiff and the New Mexico Class suffered injury in the form of a price premium.

126. Defendants intended for consumers, including the New Mexico Plaintiff and members of the New Mexico Class, to rely on their misrepresentations and omissions so that they would purchase Cage Free eggs and do so at a price premium. Defendants also made their misrepresentations and omissions knowingly. They should have—and in fact did—know that the hens producing Cage Free eggs are not "free to roam in a pleasant, natural environment."

127. As a result, the New Mexico Plaintiff and members of the New Mexico Class each seek and are entitled to: (a) actual damages; (b) reasonable attorney's fees and costs; and (c) any other relief the Court deems proper. N.M. Stat. § 57-12-10.

**Seventh Cause of Action**
**Violation of Section 349 of the New York General Business Law**
**(Brought by the New York Plaintiffs on Behalf of the New York Class)**

128. Plaintiffs incorporate by reference and reallege here all foregoing paragraphs of this Complaint.

129. Section 349 of the New York General Business Law ("Section 349") bars

"[d]eceptive acts or practices in the conduct of . . . business, trade or commerce." N.Y. Gen. Bus. Law § 349.

130.   Defendants violated Section 349.  They stated the following on Cage Free eggs' packaging: "Every hen selected to lay Eggland's Best Cage Free eggs is free to roam in a pleasant, natural environment."  That statement was not true.  And it was also misleading based on what it omitted.  Defendants failed to state, on Cage Free eggs' packaging, that hens producing Cage Free eggs do not have access to the outdoors, natural vegetation, fresh air, or sunlight.  Defendants also failed to state that hens producing Cage Free eggs are kept in facilities providing them with approximately one square foot (or less) of floor space.

131.   Defendants' misrepresentations and omissions caused injury to the New York Plaintiffs and the New York Class.  Those misrepresentations and omissions permitted Defendants to sell Cage Free eggs at prices higher than Defendants otherwise would have been able to sell them.  This heightened price was charged both to those who saw and relied on Defendants' misrepresentations and omissions and those who did not.  Thus, the New York Plaintiffs and the New York Class suffered injury in the form of a price premium.

132.   Defendants intended for consumers, including the New York Plaintiffs and members of the New York Class, to rely on their misrepresentations and omissions so that they would purchase Cage Free eggs and do so at a price premium.  Defendants also made their misrepresentations and omissions knowingly.  They should have—and in fact did—know that the hens producing Cage Free eggs are not "free to roam in a pleasant, natural environment."

133.   As a result, the New York Plaintiffs and members of the New York Class each seek and are entitled to: (a) actual damages or $50, whichever is greater, for each of Defendants' violations; (b) three times actual damages up to $1,000 for each of Defendants' willful or knowing

violations; (c) reasonable attorney's fees and costs; and (d) any other relief the Court deems proper.

N.Y. Gen. Bus. Law § 349(h).

**Eighth Cause of Action**
**Violation of the Oregon Unlawful Trade Practices Act**
**(Brought by the Oregon Plaintiff on Behalf of the Oregon Class)**

134.    Plaintiffs incorporate by reference and reallege here all foregoing paragraphs of this Complaint.

135.    Under the Oregon Unlawful Trade Practices Act ("UTPA"), it is unlawful to, in the course of business, cause "likelihood of confusion or of misunderstanding as to the source" of "goods or services"; represent that "goods or services" have "characteristics" or "benefits" that they "do not have"; represent that "goods or services are of a particular standard, quality, or grade . . . if [they] are of another"; or engage "in any other unfair or deceptive conduct in trade or commerce."  ORS §§ 646.608(1)(b), (e), (g), (u).

136.    Defendants violated each of these sections of the UTPA.  They stated the following on Cage Free eggs' packaging: "Every hen selected to lay Eggland's Best Cage Free eggs is free to roam in a pleasant, natural environment."  That statement was not true.  And it was also misleading based on what it omitted.  Defendants failed to state, on Cage Free eggs' packaging, that hens producing Cage Free eggs do not have access to the outdoors, natural vegetation, fresh air, or sunlight.  Defendants also failed to state that hens producing Cage Free eggs are kept in facilities providing them with approximately one square foot (or less) of floor space.

137.    Defendants' misrepresentations and omissions caused injury to the Oregon Plaintiff and the Oregon Class.  Those misrepresentations and omissions permitted Defendants to sell Cage Free eggs at prices higher than Defendants otherwise would have been able to sell them.  This heightened price was charged both to those who saw and relied on Defendants' misrepresentations

- 33 -

and omissions and those who did not. Thus, the Oregon Plaintiff and the Oregon Class suffered injury in the form of a price premium.

138.    Defendants intended for consumers, including the Oregon Plaintiff and members of the Oregon Class, to rely on their misrepresentations and omissions so that they would purchase Cage Free eggs and do so at a price premium. Defendants also made their misrepresentations and omissions knowingly. They should have—and in fact did—know that the hens producing Cage Free eggs are not "free to roam in a pleasant, natural environment."

139.    As a result, the Oregon Plaintiff and members of the Oregon Class each seek and are entitled to: (a) actual damages or statutory damages of two hundred dollars, whichever is greater; (b) punitive damages; (c) reasonable attorney's fees and costs; and (d) any other relief the Court deems proper. ORS §§ 646.638(1), (8).

### Ninth Cause of Action
### Violation of the Washington Consumer Protection Act
### (Brought by the Washington Plaintiff on Behalf of the Washington Class)

140.    Plaintiffs incorporate by reference and reallege here all foregoing paragraphs of this Complaint.

141.    Under the Washington Consumer Protection Act ("CPA"), "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." Wash. Rev. Code § 19.86.020.

142.    Defendants committed unfair and deceptive acts and practices in violation of the CPA. They stated the following on Cage Free eggs' packaging: "Every hen selected to lay Eggland's Best Cage Free eggs is free to roam in a pleasant, natural environment." That statement was not true. And it was also misleading based on what it omitted. Defendants failed to state, on Cage Free eggs' packaging, that hens producing Cage Free eggs do not have access to the outdoors,

natural vegetation, fresh air, or sunlight. Defendants also failed to state that hens producing Cage Free eggs are kept in facilities providing them with approximately one square foot (or less) of floor space.

143. Defendants' misrepresentations and omissions caused injury to the Washington Plaintiff and the Washington Class. Those misrepresentations and omissions permitted Defendants to sell Cage Free eggs at prices higher than Defendants otherwise would have been able to sell them. This heightened price was charged both to those who saw and relied on Defendants' misrepresentations and omissions and those who did not. Thus, the Washington Plaintiff and the Washington Class suffered injury in the form of a price premium.

144. Defendants intended for consumers, including the Washington Plaintiff and members of the Washington Class, to rely on their misrepresentations and omissions so that they would purchase Cage Free eggs and do so at a price premium. Defendants also made their misrepresentations and omissions knowingly. They should have—and in fact did—know that the hens producing Cage Free eggs are not "free to roam in a pleasant, natural environment."

145. As a result, the Washington Plaintiff and members of the Washington Class each seek and are entitled to: (a) actual damages or three times actual damages; (b) reasonable attorney's fees and costs; and (c) any other relief the Court deems proper. Wash. Rev. Code § 19.86.090.

## PRAYER FOR RELIEF AND DEMAND FOR JURY TRIAL

WHEREFORE, Plaintiffs, individually and on behalf of all similarly situated persons, demand a jury trial for all claims so triable and respectfully request that the Court grant the following relief:

A. Certification of this case as a class action pursuant to Federal Rule of Civil Procedure 23;

B. Designation of Plaintiffs as class representatives of the above-defined classes and

designation of counsel of record as class counsel for the classes;

C.      A declaratory judgment that the practices complained of herein are unlawful;

D.      An award of actual damages, statutory damages, punitive damages, restitution, and other relief provided for under the foregoing causes of action as set forth above;

E.      An award of attorneys' fees and costs incurred in this action, including expert fees;

F.      Pre-judgment and post-judgment interest, as provided by law;

G.      Reasonable service awards for each named Plaintiff; and

H.      All other legal and equitable relief that this Court deems necessary, just, and proper.

Dated: July 24, 2024

Respectfully submitted,

*/s/ John J. Frawley*
Douglas M. Werman (*pro hac vice*
motion forthcoming)
John J. Frawley (*pro hac vice*
motion forthcoming)
**WERMAN SALAS P.C.**
dwerman@flsalaw.com
jfrawley@flsalaw.com
77 W. Washington St., Suite 1402
Chicago, Illinois 60602
Phone No.: (312) 419-1008

*/s/ Michelle Tolodziecki*
Pete Winebrake
Michelle Tolodziecki
**WINEBRAKE & SANTILLO, LLC**
pwinebrake@winebrakelaw.com
mtolodziecki@winebrakelaw.com
715 Twining Road, Suite 211
Dresher, PA 19025
Phone No.: (215) 866-1551

*Attorneys for Plaintiffs and the Putative
Classes*

Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PATRICIA CAVALLARO-KEARINS,
MARY CEA, JOSHUA DAVIDSON,
AMANDA FIELDS, TINA FULFORD,
ANTONETT GARRETT, VALERIE
RESOR, PHILIP SMITH, MICHELLE
SPURGEON, and DENISE WILSON, on
behalf of themselves and all other similarly
situated individuals,

        Plaintiffs,

        v.

EGGLAND'S BEST, INC. and EGGLAND'S
BEST, LLC,

        Defendants.

## AFFIDAVIT OF JOHN J. FRAWLEY

I, John J. Frawley, declare as follows:

1.     I have personal knowledge of the factual matters set forth in this affidavit and would testify to them if called as a witness.

2.     I am submitting this affidavit under Section 1780(d) of the California Civil Code in support of the lawsuit being filed by the above-captioned plaintiffs ("Plaintiffs") against the above-captioned defendants ("Defendants").

3.     The Eastern District of Pennsylvania is a proper place for the trial of Plaintiffs' lawsuit under Section 1780(d). According to the Pennsylvania Department of State's website, both Defendants conduct business from 1400 South Trooper Road, Suite 201, Jeffersonville, Pennsylvania. That address falls within Montgomery County, Pennsylvania, which is within the Eastern District of Pennsylvania.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 23, 2024, in Chicago, Illinois.

/s/ John J. Frawley
John J. Frawley
WERMAN SALAS P.C.
77 West Washington Street, Ste. 1402
Chicago, Illinois 60602
(312) 419-1008
jfrawley@flsalaw.com

Date: 7/23/2024

Notarized: Maria D. Obregon Reyes

MARIA D OBREGON REYES
Official Seal
Notary Public - State of Illinois
My Commission Expires Nov 21, 2026

2